**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Mack GILLARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 3, 2003.

Filed May 27, 2004.

---

David S. Rudenstein, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: TODD, BOWES, and CAVANAUGH, JJ.

TODD, J.

¶ 1 Mack Gillard appeals the judgment of sentence of five concurrent terms of 10 to 20 years in prison, plus fifteen years probation to run consecutively with the other sentences, imposed following his conviction at a bench trial of five counts of armed robbery,[1] possession of an instrument of crime ("PIC"),[2] and conspiracy[3] by the Court of Common Pleas of Philadelphia County. We affirm.

¶ 2 The relevant facts and procedural history as revealed by the record before us are as follows. On April 16, 2001, a man wearing a ski mask, a blue jumpsuit, and carrying a gun, later identified as Appellant, entered Vincent's Bar on South 6th Street in Philadelphia. Four customers and the bartender were in the bar at the time. Appellant pointed his gun toward the customers and ordered them to the rear of the bar facing the back wall. Appellant said nothing, but then pointed his weapon toward the cash register. The bartender opened it and handed Appellant its contents, which totaled $65. Appellant was in the bar for three to four minutes and then fled.

¶ 3 Appellant subsequently was apprehended by police and gave a statement in which he admitted to robbing the bar. He filed a motion to suppress the statement, which was denied, and the case proceeded to trial.[4] At trial, he testified that he had secured the gun and jumpsuit from his cousin, John Green, who acted as a lookout while Appellant robbed the bar. Appellant admitted that he waved the gun in order to get the patrons back into the corner and then took the contents of the cash register from the bartender. There is no dispute in the record that Appellant took nothing else from any other person in the bar, nor did he fire any shots during the incident. He testified that he gave his cousin $15 and kept the remaining $50 for food and heroin.

¶ 4 Appellant was charged with five counts of robbery, PIC, and conspiracy. Following the unsuccessful litigation of his suppression motion, he waived his right to a jury trial and proceeded to a bench trial before the Honorable Pamela Pryor Dembe on September 6, 2002, who convicted him of all charges. Following his sentencing on October 24, 2002, Appellant timely appealed, asking us to consider the following questions, which we have paraphrased:

I. Did the trial court err when it found that the Appellant had committed five robberies, where there

---

1. 18 Pa.C.S.A. § 3701.

2. 18 Pa.C.S.A. § 907.

3. 18 Pa.C.S.A. § 903.

4. Appellant has not challenged the suppression court's ruling on appeal.

was sufficient evidence only to find him guilty of one robbery?

II. Was the verdict on four of the five robbery convictions against the weight of the evidence?

III. In the event that four of Appellant's robbery convictions should be vacated, should the matter be remanded for resentencing?

(Appellant's Brief at 3.)

■ ¶ 5 Appellant first argues that the evidence presented at trial was insufficient to support his conviction of five counts of robbery because he received money only from the cash register and did not actually attempt to take anything from the other patrons in the bar. (*Id.* at 9–13.) He argues that the evidence presented was insufficient to support the trial court's determination that four other victims in the bar were sufficiently terrorized to support separate robbery convictions for each of them because "[t]he person with the weapon proceeded without violence, did not strike anyone, did not threaten anyone, did not take their money, did not ask for their money, and could best be described as a 'gentleman robber.'" (*Id.* at 10.)

¶ 6 When presented with a claim that the evidence was insufficient to sustain a conviction,

> an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt.

*Commonwealth v. Hawkins,* 549 Pa. 352, 366, 701 A.2d 492, 499 (1997).

¶ 7 A person commits the crime of robbery if, in the course of committing a theft, he "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(ii). In her opinion written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Judge Dembe determined that Appellant's conviction of five counts of robbery was proper because the evidence at trial demonstrated that Appellant had pointed his gun at the four patrons in the bar, and forced them to the back of the room facing the wall while he robbed the cash register, thereby putting them in fear as required under the statute. (Trial Court Opinion, 3/11/03, at 2.) The court further opined that under *Commonwealth v. Rozplochi,* 385 Pa.Super. 357, 561 A.2d 25 (1989), the fact that Appellant had terrorized multiple people during the course of committing one theft was sufficient to support robbery convictions for each of those persons. (Trial Court Opinion, 3/11/03, at 3.)

¶ 8 In *Rozplochi,* we considered a similar question to that which is before us in the present case. There, this Court determined that the appellant committed two robberies by threatening to kill two employees of a business establishment during the course of a single theft from the business. *Rozplochi,* 385 Pa.Super. at 367, 561 A.2d at 30. The appellant entered a business brandishing a gun and threatening to "blow away" the two employees inside. His intention was to rob a safe on the premises. He pushed one of the employees up against a wall and the other up to the safe, demanding its contents. Following a knock at the door, the appellant cocked the gun, aiming it at the head of the employee who was emptying the safe for him, and stated: "If I don't get out of here ... you aren't either." *Id.* at 367, 561 A.2d at 27.

¶ 9 Following his conviction of two counts of robbery, Rozplochi appealed, arguing that because he took no personal

property from either of the two employees, and took only the assets of the business in the incident, he should only have been convicted of one count of robbery. *Id.* at 362, 561 A.2d at 28. He further argued that the actual victim of the robbery was the business, rather than either of the employees whom he held at gunpoint. *Id.*

¶ 10 Finding this question to be one of first impression, this Court examined the legislative intent of our robbery statute and determined that the legislature intended to permit separate punishments for threatening more than one person during the course of one robbery. *Id.* at 364–65, 561 A.2d at 29. We held that had the legislature intended to preclude multiple punishments, it could have defined robbery as "threatening *another person or persons* during the course of a theft." *Id.* at 365, 561 A.2d at 29. We further held that, by analogy, because the appellant could have been convicted of two counts of recklessly endangering another person by waving a gun at both employees, he should also be subject to conviction of two counts of robbery for threatening to harm both employees while stealing only from the safe. *Id.* Finally, we concluded in that case that because the employees each had a "protective concern" for their employer's property and the appellant had threatened to inflict serious bodily injury on each employee in order to effectuate a theft of the property from their common employer, the appellant could be convicted of two counts of robbery. *Id.* at 368, 561 A.2d at 30.

¶ 11 In the present case, the Commonwealth argues, and the trial court held, that a conviction for multiple robberies was proper under *Rozplochi* because Appellant terrorized multiple people, though committed only a single theft. (Trial Court Opinion, 3/11/03, at 2–3.) Appellant argues, however, that *Rozplochi* is distinguishable from the case before us because

"there is absolutely no evidence, either direct or circumstantial, that any of the other patrons in the bar were terrorized." (Appellant's Brief at 10.) He further argues that because four out of the five victims did not testify at trial and the victim who did testify did not testify to being placed in a "state of terror", the Commonwealth did not sustain its burden of proving that each of the victims was threatened. (*Id.* at 12.) We disagree.

¶ 12 Although Appellant, in the present case did not make explicit verbal threats to the patrons in the bar, as did the appellant in *Rozplochi*, we find that Appellant's physical act of waving the victims to the back of the room with his gun and requiring that they remain facing the back wall was sufficiently threatening to satisfy the essential element of the robbery statute. Appellant's non-verbal message was clear: any patron who resisted or refused his silent order made at gunpoint clearly was placing himself in imminent danger of being shot by Appellant. We previously have held that evidence that a gun was pointed at victims during a robbery was sufficient to establish that the perpetrators could inflict death or serious bodily injury. *Commonwealth v. Rivera*, 349 Pa.Super. 303, 307, 503 A.2d 11, 12–13 (Pa.Super.1985).

¶ 13 We further find that although the patrons in the bar in this case had no "protective concern" for the stolen property, as did the robbery victims in *Rozplochi*, this distinction does not alter our conclusion. Because Appellant's actions were sufficiently threatening to all of the patrons in the bar to place them in legitimate fear of serious bodily injury, we conclude that under the plain language of the robbery statute, the Commonwealth presented sufficient evidence to support Appellant's conviction of five counts of robbery.

Accordingly, we reject Appellant's contention to the contrary.

 ¶ 14 Appellant next argues that he is entitled to a new trial on four of the five robbery convictions because the verdict was against the weight of the evidence. (Appellant's Brief at 13.) Before reaching the merits of this argument, however, we must determine whether it has been properly preserved for our consideration on appeal.

¶ 15 Rule 607 of the Pennsylvania Rules of Criminal Procedure provides in relevant part as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). As noted in the comment to Rule 607, "[t]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Here, Appellant first raised his claim that the verdict was against the weight of the evidence in his statement filed pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. As this Court concluded in *Commonwealth v. Washington*, 825 A.2d 1264, 1266 (Pa.Super.2003), Rule 607 clearly requires that such a claim be raised initially by a motion to the trial court, and the failure to do so compels this Court to find the issue waived, even if it was ultimately addressed by the trial court in its Rule 1925(a) opin-

ion. Accordingly, we find this issue to be waived.[5]

¶ 16 For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

¶ 17 Judgment of sentence **AFFIRMED.**

---

**5.** In light of our holding with regard to Appellant's first two claims of error, we need not reach the third.